**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| ALLIANCE PARTY and ROQUE<br> "ROCKY" DE LA FUENTE,<br><br>    *Plaintiffs,*<br><br>v.<br><br>VIRGINIA STATE BOARD OF<br>ELECTIONS, ROBERT H. BRINK,<br>Chairman of the State Board of Elections, in<br>his official capacity, JOHN O'BANNON,<br>Vice-Chairman of the State Board of Elections,<br>in his official capacity, JAMILAH D. LECRUISE,<br>Secretary of the State Board of Elections, in her<br>official capacity, CHRISTOPHER E. PIPER,<br>Commissioner of the State Board of  Elections,<br>in his official capacity, and JESSICA<br>BOWMAN, Deputy Commissioner of the<br>State Board of Elections, in her<br>official capacity,<br><br>    *Defendants.*<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No 1:20-cv-774 |

**PLAINTIFFS' CIVIL COMPLAINT FOR DECLARATORY AND INJUNCTIVE**
**RELIEF**

1.    Plaintiffs Alliance Party ( "Plaintiff Alliance Party" or "Alliance Party") and Roque "Rocky" De La Fuente ( "Plaintiff ") (collectively "Plaintiffs") by and through their undersigned counsel, file this action seeking prospective declaratory and injunctive relief and to modify Virginia's in-person signature collection and witnessing requirements as applied to independent and third-party presidential candidates seeking to qualify for the November 3, 2020, Virginia general election ballot as a direct consequence of the current and ongoing COVID-19 pandemic.   The Governor's emergency orders effectively shutting down the State of Virginia renders the in-person collection of signatures on election petitions unlawful and functionally

1

impossible as a direct result of social distancing protocols employed by federal and state governments to combat the spread of COVID-19 and the long-term fear and unwillingness of individual voters to be approached by strangers requesting that they sign election petitions in violation of social distancing norms drummed into their heads by federal, state and local officials through executive orders, proclamations, press conferences and the nearly ubiquitous media advertising purchased both by government agencies (such as the Centers for Disease Control) and commercial businesses seeking to glom on to the current 'Stay Home Stay Safe…We Are In This Together' mantra.

2.      On April 23, 2020, Judge Rebecca R. Pallmeyer of the United States District Court for the Northern District of Illinois preliminarily enjoined the number of signatures required to place the name of an independent candidate on the 2020 general election ballot by reducing the number of signatures required to secure ballot access to 10% of the normal statutory requirement as a result of the social distancing and stay-at-home orders issued to stem the transmission of the novel Wuhan coronavirus in Illinois.  *See Libertarian Party of Illinois v. Pritzker*, 1:20-cv-02112, Doc. No. 27 (N.D. Ill, J. Pallmeyer, April 23, 2020).

3.      Obvious and indisputable facts show the signature collection requirement imposed by Va. Code § 24.2-543(A) on independent and third-party presidential candidates should be held unconstitutional for the 2020 presidential election as a result of the ongoing pandemic - which makes it unlawful and nearly impossible for independent and third-party presidential candidates to collect the statutorily-required number of valid signatures to secure ballot access for the 2020 Virginia general election.

4.      Excessive ballot access requirements impair "core political speech" of both candidates and voters – speech afforded the highest level of constitutional protection under the First and Fourteenth Amendments to the United States Constitution.

5.      Under the current pandemic conditions and restrictions, the requirements imposed on independent and third-party presidential candidates by Va. Code § 24.2-543(A) impose a temporary severe restriction on rights guaranteed under the First and Fourteenth Amendments to the United States Constitution.  Those requirements are not narrowly tailored to advance a compelling governmental interest during an ongoing public health emergency and its immediate aftermath and are unconstitutional and must be immediately enjoined.

6.      Plaintiffs also challenge: (1) the requirement that independent and third-party presidential candidates must name their presidential electors before they may circulate the Petition of Qualified Voters; or, in the alternative, (2) the prohibition that a party may only substitute a presidential elector(s) upon the death or disqualification of the elector(s) and not upon the withdraw of the elector(s).

7.      Accordingly, Plaintiffs respectfully request this Court to enjoin Defendants from enforcing Va. Code § 24.2-543(A) for the 2020 general election and provide complete relief in the form of an order requiring Defendant to either: (1) order that Defendants shall accept petitions reducing the number of signatures required to secure ballot access under Va. Code § 24.2-543(A) to 2,000 valid signatures; or (2) place the names of independent and third-party presidential candidates on Virginia's 2020 general election ballot upon the payment of a $5,000.00 filing fee to Defendants on or before noon on August 21, 2020, in lieu of the signature collection requirement imposed by Va. Code § 24.2-543(A).

8.      Plaintiffs also request an order preliminarily and permanently enjoining Defendants from enforcing either: (1) the requirement under Va. Code §24.2-543(A) that independent and third-party presidential candidates must name their presidential electors before they may circulate the Petition of Qualified Voters to secure ballot access; or (2) the prohibition that presidential electors may only be substituted upon either their death or disqualification and instead permit presidential electors to be substituted upon their withdraw by the party for whom they are selected to serve.

## JURISDICTION

9.      Jurisdiction lies in this Court under 28 U.S.C. § 1331, which provides that the district courts of the United States shall have original jurisdiction of all civil actions arising under the Constitution of the United States.

10.      Moreover, jurisdiction lies under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(a), the jurisdictional counterpart of 42 U.S.C. § 1983, as Plaintiffs allege a violation of rights guaranteed to them under the United States Constitution.

## VENUE

11.      Venue is proper in the United States District Court for the Eastern District of Virginia under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.  Furthermore, Defendants exercise statutory authority within this district and maintains their principal office within the District.

## PARTIES

12.      Plaintiff Alliance Party was created on October 14, 2018, at a meeting in Denver, Colorado when three political parties, the American Moderates Party, the Modern Whig Party, and the American Party of South Carolina agreed to merge.  On January 4, 2019, the Alliance

Party officially registered with the Federal Elections Commission. Subsequently the Independence Party merged with the Alliance Party in 2019, the American Alliance Party merged with the Alliance Party in 2019, and the Independent Party of Connecticut formally merged with the Alliance Party in 2020.

13.     Plaintiff Alliance Party is governed by the Alliance Party National Committee. Jim Rex is the Chairman of Plaintiff Alliance Party National Committee. Plaintiff Alliance Party's mailing address is P.O. Box 1354, Anacortes, WA 98221.

14.     On April 25, 2020, Plaintiff Alliance Party conducted an online national convention and formally nominated Plaintiff Roque "Rocky" De La Fuente of California as its 2020 nominee for the Office of President of the United States and Darcy Richardson of Florida as its 2020 nominee for the Office of Vice President of the United States. Owing to automatic ballot status in certain states, Plaintiff Alliance Party's presidential ticket secured immediate ballot access for the 2020 general election in Delaware, South Carolina, Mississippi, and Florida.

15.     Plaintiff Roque "Rocky" De La Fuente is the 2020 nominee of Plaintiff Alliance Party for the Office of President of the United States.

16.     Plaintiff De La Fuente intends to seek ballot access for the 2020 presidential general election in every state where such access is permitted.

17.     Plaintiff De La Fuente is over the age of 35, is a natural born citizen of the United States of America, having been born in San Diego, California, and has been a continual resident of the United States for over 35 years.

18.     Plaintiff De La Fuente satisfies all of the qualifications enumerated under the Presidential Qualification Clause of Article II, section 1, clause 5 of the United States Constitution.

19.     Defendant Virginia State Board of Elections (the "Board"), as part of the Virginia Department of Elections, vested with statutory authority to enforce ballot access requirements in the State of Virginia.  *See* Va. Code § 24.2-103(A); § 24.2-543.  In furtherance of this statutory authority the Board has promulgated the "Petition of Qualified Voters" which must be used to collect petition signatures of registered voters in order to place Plaintiff De La Fuente's name on Virginia's 2020 general election presidential ballot.  The Board's address is 1100 Bank Street, Richmond, VA 23219.

20.     Defendant Robert H. Brink ("Brink") is the Chairman of Defendant Virginia State Board of Elections and is being sued in his official capacity for declaratory and injunctive relief under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, as well as costs and attorney's fees under 42 U.S.C. § 1988(b).

21.     Defendant John O'Bannon ("O'Bannon") is the Vice Chairman of Defendant Virginia State Board of Elections and is being sued in his official capacity for declaratory and injunctive relief under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, as well as costs and attorney's fees under 42 U.S.C. § 1988(b).

22.     Defendant Jamilah D. Lecruise ("Lecruise") is Secretary of Defendant Virginia State Board of Elections and is being sued in her official capacity for declaratory and injunctive relief under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, as well as costs and attorney's fees under 42 U.S.C. § 1988(b).

23.     Defendant Christopher E. Piper ("Piper") is a Commissioner of Defendant Virginia State Board of Elections and is being sued in his official capacity for declaratory and injunctive relief under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, as well as costs and attorney's fees under 42 U.S.C. § 1988(b).

24.     Defendant Jessica Bowman ("Bowman") is a Deputy Commissioner of Defendant Virginia State Board of Elections and is being sued in her official capacity for declaratory and injunctive relief under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, as well as costs and attorney's fees under 42 U.S.C. § 1988(b).

25.     At all relevant times, all Defendants were engaged in state action under color of state law.

### FACTS

26.     Virginia classifies ballot access for presidential candidates into two categories: (1) Political parties as defined by Va. Code §24.2-101; and (2) any other "group of qualified voters, not constituting a political party as defined in §24.2-101, may have the names of electors selected by them, including one elector residing in each congressional district and two from the Commonwealth at large, printed upon the official ballot to be used in the election of electors for President and Vice President by filing a petition pursuant to this section." *See* Va. Code §24.2-543(A).

27.     As of June 12, 2020, only two political parties are recognized by the Commonwealth of Virginia pursuant to Va. Code §24.2-101, the Republican and Democratic parties.

28.     Presidential candidates who are not the nominee of a political party as defined by Va. Code §24.2-101 are typically called independent and/or third-party presidential candidates.

29.     Plaintiff Alliance Party is not a recognized political party pursuant to Va. Code §24.2-101, and, accordingly, must file a petition pursuant to Va. Code §24.2-543(A) to secure ballot access for the 2020 Alliance Party presidential nominee, Plaintiff Roque "Rocky" De La Fuente.

30.     In order to gain access for its presidential nominee, Plaintiff Alliance Party must submit a petition to the Board signed by at least 5,000 qualified voters and include signatures of at least 200 qualified voters from each congressional district. *See* Va. Code §24.2-543(A).

31.     A petition filed pursuant to Va. Code §24.2-543(A) must be filed on or before noon of the seventy-fourth day before the presidential election.  The seventy-fourth day before the November 3, 2020 presidential election is August 21, 2020.

32.     Plaintiff Alliance Party may only lawfully file a petition containing signatures collected on or after January 1, 2020.  *See* Va. Code §24.2-543(A).

33.     However, Va. Code §24.2-543(A) requires that a Petition of Qualified Voter "shall state the names of the electors selected by the petitioners, the party name under which they desire the named electors to be listed on the ballot, and the names of the candidates for President and Vice President for whom the electors are required to vote in the Electoral College.

34.     Therefore, a Petition of Qualified Voters cannot be circulated by Plaintiff Alliance Party until all presidential electors have been identified so that they can be named on the Petition of Qualified Voters.

35.     Presidential electors, in turn, cannot be realistically secured until the presidential electors know who the candidate is for whom they will be required to cast ballots if elected.

36.     Plaintiff Alliance Party nominated Plaintiff De La Fuente as the party's 2020 nominee of the Office of President of the United States on April 25, 2020.

37.     Because Plaintiff Alliance Party nominated their national ticket on April 25, 2020, it was functionally impossible to circulate a Petition of Qualified Voters to secure the required 5,000 signatures of qualified voters until well after April 25, 2020, because Plaintiff had to locate

the required presidential electors whose names must be named on the Petition of Qualified Voters before circulation of the petition could start.

38.     Va. Code §24.2-543(A) permits the name of a presidential candidate named on a Petition of Qualified Voter to be substituted upon the mere "withdraw" or death of the candidate.

39.     Va. Code §24.2-543(A), therefore, permits qualified voters to sign a Petition of a Qualified Voter with the name of a "straw" or place-keeper presidential candidate that can be replaced upon the formal nomination of the party's actual presidential candidate.

40.     However, Va. Code §24.2-543(A), only permits the substitution of a presidential elector upon the "death or disqualification of any person listed as an elector for candidates for President and Vice President on a petition filed pursuant to this section."

41.     In Virginia, the names of the presidential electors are NOT printed on the ballot.

42.     In Virginia, the presidential ballot is constructed in the following manner (based on the 2016 presidential sample ballot published by the City of Virginia Beach for the general and special elections held on November 8, 2016):

President and Vice President<br>
(Vote for only one)

O     **DEMOCRATIC PARTY**
Electors for
**Hillary Clinton,** President
**Tim Kaine,** Vice President

O     **REPUBLICAN PARTY**
Electors for
**Donald J. Trump,** President
**Michael R. Pence,**  Vice President

O     **LIBERTARIAN PARTY**
Electors for
**Gary Johnson,** President
**Bill Weld,**  Vice President

O     **GREEN PARTY**
Electors for
**Jill Stein,** President
**Ajamu Baraka,** Vice President


O     **INDEPENDENT**
Electors for
**Evan McMullin,** President
**Nathan Johnson,** Vice President

43.     The statutory requirement that all independent and third-party presidential electors must be named before Plaintiff Alliance Party may circulate a Petition of Qualified Voters, combined with the fact that named presidential electors may only be substituted upon their death or disqualification (while permitting the name of the actual presidential candidate to be substituted upon a mere withdraw), imposes a severe restriction on ballot access, and rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution, by delaying the circulation of a Petition of Qualified Voters until all presidential electors can be secured (which can only be accomplished after the nomination of the party's national ticket).  Such a restriction is neither narrowly tailored to advance a compelling, or even legitimate, governmental interest nor tethered to any legitimate administrative purpose of the Commonwealth.

44.     In contrast, the presidential candidates for the major political parties (currently the Republican and Democratic parties) only need to select, name and file their presidential electors very close to the "seventy-fourth day before the presidential election" because the selection of their presidential electors does not need to be done sooner because the selection of presidential electors for Republican and Democratic party presidential candidates is not required before any of their other ballot access requirements can be satisfied.  *See* Va. Code §24.2-542.

45.     By contrast, independent and third-party presidential candidates must select and name their presidential electors well before the seventy-fourth day before the election because they must place the names of their presidential electors on the Petition of Qualified Voters before the petition can be circulated to collect the required number of valid signatures which must be filed, together with all other documents, on or before the seventy-fourth day before the presidential election.  *See* Va. Code §24.2-543(A).

46.     To gain access to Virginia's 2020 presidential general election ballot, in addition to the petition containing the signatures of at least 5,000 qualified voters[1], Plaintiff De La Fuente must also file with Defendant Virginia State Board of Elections a Declaration of Candidacy on or before noon on August 21, 2020.

47.     Plaintiff De La Fuente must also file, along with the Declaration of Candidacy and the Petition of Qualified Voters, a signed and notarized oath from all selected presidential electors equal to the number of whole electors allocated to the Commonwealth of Virginia, with at least one (1) elector from each of Virginia's congressional districts no later than noon on August 21, 2020.  *See* Va. Code. 24.2-543(A).

48.     Collecting signatures by hand on paper nomination petitions through face-to-face solicitation is inherently burdensome, labor-intensive, and inefficient as a means of demonstrating voter support.  Many signatures are often invalidated due to illegibility, missing information, and other mere technical defects.  This obligates candidates and political parties to collect at least 25% to 50% more signatures than required, in order to account for those signatures that might be later invalidated.  In fact, the Board expressly recognizes that at least 50% additional signatures above the minimum should be collected by instructing candidates:

---

[1]     200 of which must be from each of Virginia's congressional districts pursuant to Va. Code §24.2-505.

"Because people who are not registered to vote often sign petitions for candidates, we recommend that you collect at least 7,500 signatures with at least 300 from each congressional district." *See* Exhibit 1 at p. 9.

49.     Unlike other states, Virginia does not permit nomination petition signatures to be collected online, as other states do for electronically signed and executed online voter registration forms.

50.     For a candidate to qualify for the ballot, a nomination petition must meet all of the requirements set forth in Va. Code §24.2-543(A).

51.     Colorado and Oklahoma have opted to impose a filing fee instead of signature collection requirements for presidential candidates in order to protect their legitimate interest to limit access to their general election ballot and to prevent ballot clutter and voter confusion:

        (a)     Colorado imposes a $1,000 filing fee, due August 5, 2020;

        (b)     Oklahoma imposes a $35,000 filing fee, due July 15, 2020.

52.     In December 2019, an outbreak of respiratory disease caused by a novel coronavirus emerged in Wuhan, China.  The respiratory disease caused by the novel coronavirus was named COVID-19 and is a highly infectious disease that is spread by person-to-person contact, and, as of July 8, 2020, has resulted in over 133,000 deaths in the United States and 544,000 deaths worldwide.

53.     On January 30, 2020, long after the Wuhan novel coronavirus spread well beyond China, the World Health Organization ("WHO") stated that COVID-19 constituted a Public Health Emergency of International Concern.

54.     Immediately after the WHO declared COVID-19 a Public Health Emergency of International Concern, and as a result of confirmed cases of COVID-19 in the United States in

California and Washington, on January 31, 2020, Health and Human Services Secretary Alex M. Azar declared a nationwide public health emergency retroactive to January 27, 2020.

55.     On February 27, 2020, to slow the spread of COVID-19, the United States Centers for Disease Control ("CDC") issued guidance recommending, among other things (such as frequent hand washing and refraining from touching mouth and face with hands), that members of the public practice "social distancing" - a practice designed to minimize close contact with others - to keep sick individuals from coming in contact with healthy individuals and thus limit opportunities for transmission of the Wuhan novel coronavirus.   The CDC continues to recommend that everyone avoid large gatherings and crowds and maintain a distance of approximately six feet from strangers (i.e., all non-family members).

56.     On March 11, 2020, the WHO declared COVID-19 a global pandemic.

57.     On March 13, 2020, the President of the United States declared a national emergency, retroactive to March 2, 2020, due to uncontained community transmission of the Wuhan novel coronavirus within the United States.

58.     On March 12, 2020, Virginia Governor Ralph S. Northam proclaimed a state of emergency in Executive Order No. 51 (2020), which authorized the Governor to issue orders to combat and retard the spread of COVID-19 in Virginia. *See* Va. Exec. Order 51 (March 12, 2020).

59.     Governor Northam's state of emergency remains in full force as of June 12, 2020.

60.     Thereafter, by Amended Executive Order No. 51 (2020), on May 26, 2020, Governor Northam extended the proclaimed state of emergency until further amended or rescinded by further executive order. *See* Va. Amended Exec. Order 51 (May 26, 2020).

61.     Under guidance issued by Governor Northam in support of his declared state of emergency, among other things, he directed the cancellation of all large public gatherings in Virginia.

62.     On March 23, 2020, Governor Northam issued Executive Order No. 53 (2020) closing all non-essential business and ordering that those businesses that are allowed to operate "shall, to the extent possible, adhere to social distancing recommendations, enhanced sanitizing practices on common surfaces, and other appropriate workplace guidance from state and federal authorities while in operation." *See* Va. Exec. Order 53 (March 23, 2020).

63.     Executive Order No. 53 also ordered that professional services should, when teleworking is not possible, adhere to social distancing recommendations, enhanced sanitizing practices on common surfaces, and apply the relevant workplace guidance from state and federal authorities.

64.     Executive Order No. 53 shall remain in full force and in effect until amended or rescinded by further executive order.

65.     On March 30, 2020, Governor Northam issued Executive Order No. 55 (2020), denominated the "Temporary Stay at Home Order Due to Novel Coronavirus (COVID-19)" ordering, in relevant part, that from March 30, 2020 to June 10, 2020:

A.      All individuals in Virginia shall remain at their place of residence, except for obtaining food, beverages, goods, services permitted in Executive Order 53, medical attention, essential social services, governmental services, assistance from law enforcement, emergency services, taking care of other individuals, animals, visiting the home of a family member, traveling required by court order or to facilitate child custody, visitation, child care, engaging in outdoor activity (provided individuals comply with social distancing requirements,

14

or traveling to and from one's residence, place of worship, work, educational institutions or volunteering with organizations that provide charitable or social services; and

       B.    All public and private gatherings of more than ten individuals are prohibited, except for the operation of businesses not required to close to the public under Order No. 53, or the gathering of family members living in the same residence. *See* Exec. Order 55 (March 30, 2020).

66.    On April 13, 2020, Governor Northam issued Executive Order No. 56 postponing the primary election scheduled for June 9, 2020, to June 23, 2020, and extending certain election deadlines commensurate with the 14-day postponement. *See* Va. Exec. Order 56 (April 13, 2020).

The postponement of the primary election was deemed appropriate because: "The actions we take now will help protect the health and safety of our citizens for months to come.  These actions include when to hold our elections.  Voting is a fundamental right and ***no one should have to choose between their health and safety and their right to vote***."  (emphasis added).

67.    On May 27, 2020, Governor Northam issued a Third Amended Executive Directive Seven (2020) which extended the validity of every driver, vehicle, special identification, and driver credential due to expire on or before July 31, 2020, for up to 90 days not to exceed August 31, 2020. *See* Va. Third Amended Exec. Order 53 (May 27, 2020).

68.    On May 28, 2020, Governor Northam issued the Second Amended Executive Order No. 61 (2020) easing certain temporary restrictions imposed under the state of emergency while also continuing to "encouraging physical distancing and teleworking, restricting businesses and gatherings" to lower the transmission rate of COVID-19.  Under the Second Amended

Executive Order No. 61 (2020), while easing some of the restrictions, Governor Northam emphasized:

> Now, we must set the path forward.  While Virginia's efforts and sacrifices seem to have slowed the spread of the virus, we know it is still present.  It is critical that as we begin to ease some of the restrictions in the next phase of our response, we remain vigilant, cautious, and measured.  We cannot race back to the lives we led before the pandemic.  The path forward will not be business as usual.  We must remember to continue to practice social distancing, to continue teleworking, whenever possible, to wash our hands frequently, to not touch our faces, and to wear face coverings whenever possible.  These measures, as well as the ones outlined below, are meant to make necessary ventures outside of your home *safer*, buy everyone, especially those who may be more vulnerable to the virus, must understand we are all *safer at home*.

*See* Va. Second Amended Exec. Order 61 (May 28, 2020).

69.     The national health emergency declared in the United States by the President effective March 2, 2020, the CDC social distancing guidelines and Governor Northam's executive orders imposing stay at home and 6 foot social distancing requirements from March 12, 2020 makes it nearly impossible for third-party and independent presidential candidates to collect the required number of valid signatures in order to gain access to the Virginia's 2020 general election ballot.

70.     Given the severity of the community transmission of the Wuhan novel coronavirus and the resulting COVID-19 pandemic and its impact on Virginia, it remains uncertain whether the state of emergency declared by Governor Northam and the associated executive orders imposing restrictions designed to severely retard personal interactions, including the "Stay at Home" order, will be fully lifted well in advance of the August 21st deadline for Plaintiffs to submit nomination petitions for the 2020 Virginia general election.

71.     To date, Plaintiffs have not been permitted to circulate nomination petitions in Virginia as a direct result of Governor Northam's state of emergency and associated executive

orders directly limiting social interactions in Virginia to quell the continued pandemic since Plaintiff Alliance Party nominated its national ticket on April 25, 2020.

72.     Petitioning to qualify candidates for the Virginia's November 3, 2020, general election ballot is not defined as an "essential" activity under any of Governor Northam's executive orders.   Accordingly, the public health emergency caused by the community transmission of Wuhan novel coronavirus and COVID-19 and the "Stay at Home" executive order issued by Governor Northam and the federal declaration of a national emergency effective March 2, 2020, make it unlawful and effectively impossible to gather petition signatures in Virginia from March 12, 2020, through to present.   Furthermore, government officials at virtually every level continue to direct people to stay at home, to practice social distancing, and to avoid proximity to any non-family member within six feet.

73.     Governor Northam's executive order extending the renewal periods for vehicle and driver licensing rules demonstrate that requiring in-person contact to satisfy Virginia's nomination petition requirements is not presently possible or safe, and has not been possible since Plaintiff Alliance Party nominated their national ticket on April 25, 2020.   Such a requirement will continue to be severely problematic for the few remaining weeks left to file nomination petitions even if Governor Northam fully rescinds his declared state of emergency in the near future.

74.     Simply stated, short of wide-spread vaccination for the Wuhan novel coronavirus, which will not occur, at the earliest, until the end of 2020, there is no evidence that the social distancing conditioning imposed by Governor Northam's state of emergency and associated executive orders, as well as the federal CDC guidance and public campaign to convince the

public that social distancing is necessary will make it impossible to collect a sufficient number of valid signatures.

75.     It is impossible to collect a signature on an election petition and maintain six feet of social distancing.

76.     Governor Jay Inslee of Washington, in Proclamation 20-53 issued on May 5, 2020, modified certain ballot access requirements in the State of Washington acknowledging that:

> WHEREAS, not all candidates for public office have the means to pay the required filing fee to be included on the ballot for election, and the statutory alternative to paying the fee involves collecting a sufficient number of signatures from voters, which is very difficult to do by the May 15, 2020, deadline without the person-to-person contact currently prohibited by Proclamation 20-25 and as amended (Stay Home Stay Healthy); and
>
> …
>
> Based on the above noted situation and under the provisions of RCW 43.06.220(2)(g), I also find that, as a result of the COVID-19 pandemic, strict compliance with [ballot access signature requirements] will prevent, hinder, or delay action that is necessary to prevent person-to-person contact and to remove barriers that prevent some candidates for election in Washington State from being included on the ballot for election…

See Wa. Proclamation No. 20-53 (May 5, 2020).

77.     By Executive Order Governor Cuomo indefinitely suspended the circulation of all election petitions in New York for independent and third-party candidates in New York.

78.     Governor Northam issued multiple executive orders delaying or modifying dozens of Virginia laws to accommodate the social distancing requirements to help prevent the spread of COVID-19, including a postponement of Virginia's primary election.  However, Governor Northam has failed to modify any of the ballot access requirements imposed solely on

third-party and independent presidential candidates to secure ballot access for the 2020 presidential election.

79.   Collecting signatures on nomination petitions during the current COVID-19 pandemic endangers not only the health and lives of Virginia voters, but also the health and lives of petition circulators and the public at large.  If a petition circulator is infected with the Wuhan novel coronavirus and is not aware of their condition, approaching willing or unwilling voters to collect signatures for nomination petitions places everyone at risk transmission of the virus responsible for COVID-19.

80.   Even if it were, or will be, legal and/or physically feasible to collect signatures on nomination petitions during the current pandemic emergency, it is unlikely that petition circulators will be able to gather signatures because there are fewer people congregating in public places and fewer people likely to open their doors to uninvited strangers seeking to collect signatures.

81.   Even after the public health emergency is lifted, the COVID-19 pandemic will continue with predictions from federal health officials such as Anthony Fauci, director of the National Institute of Allergy and Infectious Diseases, of a second COVID-19 wave if CDC social distancing guidelines are not followed even after states begin to allow non-essential commercial activity to resume.  *See*, Axelson, Ben "Dr. Fauci: Coronavirus Second Wave 'not inevitable' if we do these things" Syracuse.com, May 28, 2020,  www.syracuse.com/coronavirus/2020/05/dr-fauci-coronavirus-second-wave-not-inevitable-if-we-do-these-things.html.

82.    Even after the pandemic subsides, the COVID-19 outbreak is likely to continue to have a negative effect on signature collection for nomination petitions in Virginia for a substantial period of time extending beyond the current election cycle.

83.     The United States Supreme Court has recognized that presidential elections are unique as they are the only national elections and decided beyond the borders of any one state, such that states have a diminished interest in imposing their most restrictive ballot access requirements.

84.     Plaintiff De La Fuente has demonstrated substantial public support in securing ballot access as the presidential nominee of the both the American Delta Party and the Reform Party in the 2016  presidential general election in Alaska, Nevada, Utah, Colorado, New Mexico, Wyoming, Idaho, Montana, North Dakota, Wisconsin, Iowa, Minnesota, Kentucky, Tennessee, Mississippi, Florida, New Jersey, Rhode Island, New Hampshire and Vermont.

85.     Plaintiffs have secured automatic ballot access for the 2020 presidential general election in Florida, South Carolina, Mississippi and Delaware.

86.     In light of the COVID-19 pandemic, the requested remedy of modifying Virginia law to permit a filing fee of $5,000, in lieu of collecting signatures, will both ensure that only legitimate presidential candidates will appear on the Virginia presidential ballot, protect the integrity of a national election by permitting candidates who have secured ballot access in other states to secure access on all other state ballots through filing fees without endangering the public through person-to-person petitioning activity.

87.     Virginia law, together with the Wuhan novel coronavirus, the COVID-19 pandemic, and Governor Northam's executive orders imposing restrictions on social contacts and failure to amend Virginia election laws to protect Plaintiffs rights guaranteed under the First and Fourteenth Amendments to the United States Constitution, is the direct cause of injury-in-fact to Plaintiffs' rights under the federal constitution.

88.     Plaintiffs' injuries are fairly traceable to Virginia laws which require Plaintiffs to collect a minimum of 5,000 valid signatures (with at least 200 valid signatures collected from voters in each of Virginia's congressional districts) to secure access to the general election ballot but do not permit any modification to those laws when public health emergencies make such collection impossible.

89.     This Court has the authority to provide complete relief and redress Plaintiffs' injuries by issuing prospective declaratory and injunctive relief prohibiting Defendants' strict enforcement of Va. Code §24.2-543(A) and ordering Defendants' to place Plaintiff De La Fuente's name on the 2020 Virginia presidential ballot if: (1) Plaintiffs timely file a Petition of Qualified Voters containing 2,000 valid signatures with at least 100 valid signatures from each of Virginia's congressional districts; or, in the alternative, (2) Plaintiffs' timely pay a $5,000 filing fee in lieu of filing a Petitions of Qualified Voters.

90.     Plaintiffs have no other remedy available at law.

## CAUSES OF ACTION

### COUNT I
### (First Amendment)

91.     Plaintiffs reassert paragraphs 1-90 as if fully set forth herein.

92.     In light of the ongoing public health emergency caused by the community transmission of the Wuhan novel coronavirus and resulting COVID-19 pandemic and the actions and inactions taken by Governor Northam to enforce social distancing requirements to retard the community transmission of the coronavirus in Virginia, while taking no action to alleviate ballot access requirements for third-party and independent presidential candidates, the in-person signature collection requirements imposed by Va. Code §24.2-543(A) severely impair rights

guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution as applied to the 2020 general election.

93.     The signature collection requirements imposed on independent and third-party presidential candidates by Va. Code §24.2-543(A) is not narrowly tailored to advance a compelling governmental interest during the state of emergency and public health crisis caused by the COVID-19 pandemic where face-to-face signature collection is currently unlawful and nearly impossible for the foreseeable future as a result of the long-term social distancing conditioning of voters resulting from government action to stem the current and future outbreaks of COVID-19.

94.     Under the circumstances of the current COVID-19 pandemic and Governor Northam's executive orders seeking to contain further spread of the virus causing COVID-19 and in combination with Governor Northam's failure to modify signature collection requirements for independent and third-party presidential candidates contesting the 2020 presidential election, a real and actual controversy exists between the parties.

95.     Plaintiffs are suffering and will continue to suffer irreparable injury as a direct and proximate result of the violations alleged herein unless Defendants' strict enforcement of Va. Code §24.20543(A) are declared unlawful and enjoined as applied to the 2020 general election.

96.      Plaintiffs demand the relief requested herein.

## COUNT II
### (Equal Protection – Early Selection of Presidential Electors)

97.     Plaintiffs reassert paragraphs 1-96 as if fully set forth  herein.

98.     The requirement imposed by Va. Code §24.2-543(A) on independent and third-party presidential candidates to select and print the names of their presidential electors, rather than simply the name of the party and presidential candidate, on their Petition of Qualified

Voters before they may lawfully circulate such petitions, impose an unequal application of the laws of Virginia when the Republican and Democratic parties have until the last day of the deadline to select their party's presidential electors without fear of any adverse impact on their access of the Virginia general election ballot – such requirements are in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

99.     Because independent and third-party candidates must first select and name their presidential electors before the may circulate their Petition of Qualified Voters, they are forced, unlike the presidential nominees of the Republican and Democratic parties, to name their presidential electors in sufficient time to collect the required number of valid signatures, which, in turn, threatens ballot access for independent and third-party presidential candidates if they cannot secure the presidential electors in time to collect the required number of valid signatures on their Petition of Qualified Voters.

100.    Equal protection concerns require that independent and third-party presidential candidates should be permitted to select and file their slate of presidential electors, in the same manner as the Republican and Democratic parties, without the need to place the names of their presidential electors on the Petition of Qualified Voters.

101.    At the point of filing the names of presidential electors independent and third-party presidential candidates stand as equals to the nominees of the Republican and Democratic parties.

102.    The requirement to print the names of presidential electors on the Petition of Qualified Voters is not tethered to a showing of substantial support necessary to secure ballot access in the same manner whereby unequal signature requirements can constitutionally be imposed on independent and third-party candidates as opposed to the more lenient ballot access

requirements imposed on recognized political parties who have demonstrated pubic support through historic voter support.

103.    A real and actual controversy exists between Plaintiffs and Defendants.

104.    Plaintiffs are suffering and will continue to suffer irreparable injury as a direct and proximate result of the violations alleged herein and that harm will continue unabated unless Defendants' enforcement of the requirement for independent and third-party presidential candidates to name their slate of presidential electors and print their names on the Petition of Qualified Voters is permanently enjoined.

105.    Plaintiffs demand the relief requested herein.

## COUNT III
### (First Amendment – Substitution Prohibition of Presidential Electors)

106.    Plaintiffs reassert each paragraphs 1-105 as if fully set forth herein.

107.    The prohibition imposed by Va. Code §24.2-543(A) that presidential electors may only be substituted upon the death or disqualification of a presidential elector and not simply upon their withdraw, requires independent and third-party presidential candidates to select and names of their presidential electors unconstitutionally early in order to print their names on the Petition of Qualified Voter, which imposes a delay in the ability of independent and third-party presidential candidates to collect the required signatures necessary to secure ballot access on Virginia's presidential ballot which is fails to advance any legitimate state interest.

108.    The requirement that presidential electors cannot be substituted upon withdraw (rather than only upon death or disqualification) fails to advance any legitimate governmental interest, as evidenced by the statutory right to substitute the party's presidential candidate upon

withdraw – a name which is actually printed on the general election ballot, as opposed to the names of electors which are not printed on the Virginia ballot.

109.    Furthermore, the prohibition against the substitution of presidential electors upon withdraw imposes a uniquely severe burden on independent and third-party presidential candidates because the challenged restriction requires them to select their slate of presidential electors before they can collect signatures to secure ballot access and delays their ability to collect signatures on their Petition of Qualified Voters because it prevents them from naming "straw" electors (in the same way "straw" presidential candidates are used on petitions before the actual party nominee is selected) that can be withdrawn and substituted before the petition is filed, thereby permitting them to immediately circulate their Petition of Qualified Voters from January 1 or as soon thereafter as possible.

110.    The challenged requirement imposes an impairment to ballot access which is neither narrowly tailored to advance a legitimate or compelling governmental interest or administrative purpose.

111.    A real and actual controversy exists between Plaintiffs and Defendants.

112.    Plaintiffs are suffering and will continue to suffer irreparable injury as a direct and proximate result of the violations alleged herein and that harm will continue unabated unless Defendants' enforcement of the prohibition against the substitution of presidential electors upon a withdraw is permanently enjoined.

113.    Plaintiffs demand the relief requested herein.

## REQUESTED RELIEF

**NOW WHEREFORE**, Plaintiffs respectfully request the following relief from this Court:

(A)     Assume original jurisdiction over the above captioned action;

(B)     Issue an emergency temporary restraining order and/or preliminary injunction prohibiting Defendants from strict enforcement of the signature collection requirements of Va. Code §24.2-543(A) against Plaintiffs to secure ballot access for Virginia's 2020 presidential elections and order Defendants to print Plaintiff De La Fuente on Virginia's 2020 presidential ballot if Plaintiff either (1) Timely files, in addition to all other required documents, a Petition of Qualified Electors with 2,000 signatures of qualified Virginia voters with at least 100 valid signatures from voters resident in each of Virginia's congressional districts; or (2) Pay a filing fee of $5,000, in addition to all other required documents, in lieu of the required Petition of Qualified Electors;

(C)     Issue a declaratory judgment stating that the signature collection requirements imposed independent and third-party presidential candidates by Va. Code §24.2-543(A) cannot be constitutionally enforced under the requirements of the First and Fourteenth Amendments to the United States Constitution as applied to the 2020 presidential general election;

(D)     Issue a permanent injunction prohibiting Defendants' strict enforcement of the signature collection requirements of Va. Code §24.2-543 imposed on independent and third-party presidential candidates during a declared state of emergency and/or public health emergency during the period to circulate a Petition of Qualified Electors in the Commonwealth of Virginia;

(E)     Issue an emergency temporary restraining order and/or preliminary injunction prohibiting Defendants from enforcing the requirement that independent and third-party presidential candidates must print the names of their presidential electors on the Petition of Qualified Electors;

26

(F)     Issue a declaratory judgment stating that the requirement imposed on independent and third-party presidential candidates to print the names of their presidential electors on their Petition of Qualified Electors is unconstitutional in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

(G)     Issue a permanent injunction prohibiting Defendants' from enforcing the requirement imposed by Va. Code §24.2-543(A) that independent and third-party presidential candidates from printing the names of their presidential electors on their Petition of Qualified Electors;

(H)     Issue an emergency temporary restraining order and/or preliminary injunction prohibiting Defendants from preventing the withdraw and substitution of presidential electors for independent and third-party presidential candidates up until the seventy-fourth day before the next presidential election;

(I)     Issue a declaratory judgment stating that the requirement of Va. Code §24.2-543(A) preventing the withdraw and substitution of presidential electors for independent and third-party presidential candidates violates rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution;

(J)     Issue a permanent injunction prohibiting Defendants from enforcing the prohibition of Va. Code §24.2-543(A) preventing the withdraw and substitution of presidential electors for independent and third-party presidential candidates;

(K)     Order Defendants to pay Plaintiffs their costs and reasonable attorney's fees under 42 U.S.C. § 1988(b); and,

(L)     Retain jurisdiction over this matter and order Defendants to provide Plaintiffs any additional relief that this Court may deem appropriate and just.

Respectfully submitted,

Dated:  July 9, 2020

ALLIANCE PARTY and ROQUE "ROCKY" DE LA FUENTE

*By counsel*

<u>/s/ Thomas Mansfield Dunlap</u>
Thomas M. Dunlap (VSB No. 44016)
Benjamin S. Barlow (VSB No. 67933)
Dunlap Bennett & Ludwig PLLC
211 Church Street SE
Leesburg, VA  20175
(703) 777-7319
Fax:  (703) 777-3656
tdunlap@dbllawyers.com
bbarlow@dbllawyers.com

Paul A. Rossi (*pro hac vice* forthcoming)
IMPG Advocates
316 Hill Street, Ste. 1020
Mountville, PA 17544
(717) 681-8344
Paul-Rossi@comcast.net

*Counsel for Plaintiffs*